No. 43,488

SUNFLOWER TIP TOP DAIRIES CO., *Appellee*, v. CITY OF JUNCTION
CITY, KANSAS, a Municipal Corporation, *Appellant*.

(389 P. 2d 845)

Opinion filed March 7, 1964.

*Robert A. Schermerhorn*, of Junction City, argued the cause, and *C. L. Hoover* and *William R. King*, of Junction City, were with him on the briefs for the appellant.

*R. H. Royer*, of Abilene, argued the cause, and *Paul H. Royer*, *James C. Johnson* and *Charles E. Bogan*, of Abilene, were with him on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This action was brought by Sunflower Tip Top Dairies Co. (plaintiff-appellee) to enjoin the enforcement of ordinance No. G-158 passed by the City of Junction City (defendant-appellant), which ordinance established certain license or regulatory fees to be paid by milk producers and distributors whose milk is sold or offered for sale within the city.

Prior to January 1, 1961, the plaintiff sold milk in Junction City under a license issued by the defendant city. On December 19, 1961, the city adopted ordinance No. G-158, a comprehensive milk ordinance. The pertinent portions applicable to the questions involved in the instant case provided for milk producers and distributors to pay a specific fee and obtain a license as a prerequisite to the sale and distribution of milk within the city. The ordinance specifically provided no license would be issued to a distributor until an annual fee of $425 was paid in advance to the city as actual cost of services performed in determining that such milk

met the bacterial, butterfat, temperature and coliform standards provided by law.

On December 27, 1961, plaintiff received a letter from the city clerk advising it was necessary for plaintiff to purchase an annual license for the regulating of milk and milk products as prescribed by the ordinance. On January 16, 1962, plaintiff, by letter, requested the city to issue the license to it for the sale and distribution of milk products in the city of Junction City and bill plaintiff on a monthly or quarterly basis for the actual cost to the city for the tests determined necessary under the provisions of G. S. 1961 Supp., 65-738 and 65-739, inasmuch as the fee for inspection could not be estimated in advance but must be billed on the basis of actual cost of such service.

At the trial the city admitted that the fee established for the year 1962 by the ordinance was an estimate of the actual cost of inspection based upon its actual cost in prior years. The plaintiff presented no competent evidence that the license fee was excessive nor that it did not represent the actual cost of the services rendered in making the inspection set forth in the mentioned statute.

The trial court found, in substance, that the ordinance violated the provisions of G. S. 1961 Supp., 65-739 in that the $425 license fee fixed by the ordinance was based on an estimated cost and not the actual cost of inspection services and was, therefore, void and inoperative. The court further found that section 65-739 violated no rights of the defendant city guaranteed it under the federal or state constitutions. The court permanently enjoined the city from enforcing the provisions of its ordinance, and assessed the costs, including attorney fees, against the city. From an order overruling its motion for a new trial, the city appeals.

G. S. 1961 Supp., 65-738 provides:

"Grade A raw milk . . . grade A pasteurized milk, . . . which have been inspected by a state agency or by a political subdivision of this state, and which have been designated grade A, may be moved, distributed, or sold, any place in this state, and any further inspection by any political subdivision of this state shall be prohibited: *Provided,* The duly authorized official of any political subdivision of this state may take samples of such products which have been moved into, distributed within, or sold within, the boundaries of such political subdivision of this state, for the sole purpose of determining that such products meet the bacterial, butterfat, temperature and coliform standards prescribed in the milk code or the requirements as established by article 7, of chapter 65, of the General Statutes of 1949, as amended and supplemented, and rules and regulations adopted thereunder or under section 75-1401 of the General Statutes of 1949: . . ."

G. S. 1961 Supp., 65-739 provides:

"Any political subdivision of this state imposing a license or regulatory fee, for the service performed in making bacterial, butterfat, temperature and coliform determinations of grade A raw milk . . . moved into, distributed within, or sold within its boundaries, shall not be permitted to fix any such charge in excess of the actual cost of such service; and it shall not be permitted to impose any other charge or license against such products, or against any person, as a prerequisite for such products to be moved into, distributed within, or sold within its boundaries."

The primary question presented here is whether or not the provision of the ordinance providing for the fee is void inasmuch as it is based upon the estimated cost as determined by the city. We are cited to no authority by either party on this question. Under the provisions of section 65-739 the city is empowered to impose a license or regulatory fee for the services performed in making certain specified tests of grade A milk moved into and distributed or sold within its boundaries, and such city shall be permitted to *fix* a charge not in excess of the actual cost of such service as a prerequisite to the issuing of the license or permit. By the use of the word "fix" the statute presupposes the city may estimate the actual cost of the services rendered under the statute and that the fee shall be payable in advance. In fixing such charge it is inherent in the statute that the fee for such service may be estimated, based upon either past experience for such service or contemplated actual cost. If in adopting the ordinance the city acted without practical experience to guide its judgment, and the fee so assessed was either inadequate or excessive, then the city, after experience demostrates the inadequacy or excessiveness of the fee, should alter it accordingly.

We are cited to no authority requiring a state or political subdivision thereof to perform a public service such as the one in question in the instant case before it can exact a fee to cover the costs involved. Such procedure would undoubtedly make it impossible, due to lack of funds, for the agency responsible to perform the service in advance, and would be administratively unsound.

The record is void of any competent evidence that the fee assessed by the city was not the actual cost of making the inspection as provided by the statute or that it was unreasonable, excessive, arbitrary or unjust. The ordinance clearly complies with the provisions of section 65-739.

We are of the opinion the trial court erred in holding the ordi-

nance was unenforceable for the reason the fee assessed was based on an estimate of the actual cost of the services to be rendered.

It is contended section 65-739 violates article 12, section 5 of the state constitution. It must be conceded the constitutional provision confers on cities the power to determine their local affairs, including the levying of taxes, *except* when such tax is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class. It is elementary that section 65-739 places a limitation on the city of Junction City from imposing a tax on milk except for the purpose therein specified and that the statute is applicable uniformly to all cities in the state. Therefore, the statute does not violate article 12, section 5 of the state constitution.

It is further contended section 65-739 is invalid in that the term "actual cost" is not defined. There is no merit to this contention. The statute clearly limits the authority of the city to take samples of the milk moved into the city for sale for the sole purpose of determining that the product meets the bacterial, butterfat, temperature and coliform standards prescribed by the statute and limits the regulatory fee thereto. In other words, the statutes limit the cities to (1) the right to take samples for specific tests, (2) the right to perform the testing service and (3) the right to impose a fee which must not exceed the actual cost of such service.

In view of what has been said, we are of the opinion the trial court did not err in upholding the validity of G. S. 1961 Supp., 65-739, and that portion of the judgment is affirmed. The remainder of the trial court's judgment is reversed and the case is remanded with directions to the trial court to set aside its judgment, except as aforementioned, and to grant a new trial on the remaining issues raised in the injunction action.

It is so ordered.

FONTRON, J., not participating.